UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GARY G. BENOIT | CIVIL ACTION |
| VERSUS | NO: 06-2402 |
| THE BOARD OF COMMISSIONERS OF THE NEW ORLEANS LEVEE DISTRICT, MICHAEL P. MC CROSSEN (IN HIS INDIVIDUAL CAPACITY), AND MAX L. HEARN (IN HIS INDIVIDUAL CAPACITY) | SECTION: "S" (1) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the defendants' motions to dismiss the plaintiff's First Amendment claim for retaliation, pursuant to 42 U.S.C. § 1983; the defamation claim; and the claims for compensatory damages and attorney fees, pursuant to La. Rev. Stat. 23:967, are **DENIED**. (Documents #10 and #11.)

**IT IS FURTHER ORDERED** that the motions to dismiss the employment-related claims under La. Rev. Stat. 23:967, over which the Civil Service Commission has exclusive jurisdiction, are **GRANTED**.

**IT IS FURTHER ORDERED** that the federal and state law claims over which the court has jurisdiction are **STAYED**, and the case is **ADMINISTRATIVELY CLOSED WITHOUT**

**PREJUDICE** to Gary Benoit's right to move to reopen the case after he has exhausted administrative remedies before the Civil Service Commission.

## I. BACKGROUND

Gary G. Benoit was employed by the Board of Commissioners of the New Orleans Levee District (the Board) as senior counsel. The Board is a political subdivision of the State of Louisiana and consists of eight commissioners, six of whom are appointed by the Governor. In his position as senior counsel, Benoit was a classified civil servant.

On September 27, 2005, Benoit hand delivered a letter to Governor Kathleen Blanco concerning the manner in which the levee district officials spent their time and taxpayers' money in the months prior to Hurricane Katrina. The letter included information about a payment of $96,000 to James P. Huey, the president of the Board until his resignation on July 8, 2005. On September 30, 2005, Benoit provided Senator David Vitter with a copy of the letter.[1]

In the first week of October, Frank Milanese, the Board's contract attorney, advised Benoit that Governor Blanco's office advised the Board and Huey of Benoit's complaint and that members of the Board were very angry. The Board assigned Benoit to post-Katrina, temporary offices in Harahan, Louisiana, and excluded him from many of the Board's activities. On November 9, 2005, the Board suspended Benoit, allegedly because of his intent to raise issues concerning the payment to Huey at a Board Legal Committee meeting. The Board reported to the press that Benoit was suspended for threatening another employee.

---

[1] The Louisiana Attorney General's office investigated the matter and issued an opinion that the President of the Board may not unilaterally issue a warrant for his own salary and that such action was illegal.

On November 15, 2005, after discussions with New Orleans Traffic Court Judge, Paul Bonin, and Hearn, the Board invited Benoit to a Board meeting to be held on November 16, 2005.  The Board inquired about the substance of the comments Benoit wished to make before his suspension, and Benoit responded in writing.  Benoit involuntarily resigned his position as senior counsel on December 7, 2005, after Board contract attorney, Frank Milanese, took him to lunch "to force his resignation."

Benoit filed a civil rights action, pursuant to 42 U.S.C. § 1983, against the Board; Michael P. McCrossen, the Vice President of the Board, in his individual capacity; and Max L. Hearn, the Executive Director of the Board and Benoit's supervisor, in his individual capacity.  Benoit alleges that the defendants violated his First Amendment rights in retaliation for writing the letters and made his working conditions so intolerable that he was forced to resign.  Benoit alleges that his speech is protected activity because it concerns matters of public concern, exposed misconduct and malfeasance in office, and was non-destructive of the defendants' operation.  Benoit also alleges that the defendants defamed him by publishing statements that he was suspended or terminated in November 2005 for threatening another employee.  Benoit filed an amended complaint adding a claim under Louisiana's whistle blower statute, La. Rev. Stat. 23:967.

The Board and McCrossen filed a motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1)[2] and 12(b)(6).  Hearn filed a separate motion to dismiss and adopted the

---

[2]   The court does not address the Rule 12(b)(1) motion as it relates to the § 1983 claim. The defendants appear to recognize that there is no authority to support a contention that Benoit must exhaust state remedies before the Civil Service Commission before bringing the § 1983

arguments of his codefendants.

## II. DISCUSSION

### A. Rule 12(b)(6) motion to dismiss

Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 109 S.Ct. 1827, 1832 (1989). The complaint is liberally construed in favor of the plaintiff, and all facts pleaded in the complaint are taken as true. See Campbell v. Wells Fargo Bank, 781 F.2d 440, 442 (5th Cir. 1986). This Court does not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 78 S.Ct. 99, 101-02 (1957).

#### 1. Motion to dismiss First Amendment claim under § 1983

The court first addresses the § 1983 claim to determine if there is federal question jurisdiction before considering the supplemental state law claims. The defendants contend that Benoit fails to state a claim under the First Amendment because his letters to Governor Blanco and Senator Vitter reporting the misuse of Board funds are not protected speech. They argue that Benoit spoke as a public employee in the performance of his official duties.

There are four elements to an employee's First Amendment retaliation claim against his employer: an adverse employment decision, speech involving a matter of public concern, a balancing of the employee's interest in commenting on matters of public concern and the employer's interest in promoting efficiency, and a connection between the speech and the

---

claim in federal court.

employer's action.  Teague v. City of Flower Mound, Texas, 179 F.3d 377, 380 (5th Cir. 1999).  The defendants' motion focuses on whether Benoit has alleged facts to support his claim that his speech was protected under the First Amendment.[3]

In Garcetti v. Ceballos, 126 S.Ct. 1951 (2006), the Supreme Court considered whether the First Amendment protects statements made by public employees pursuant to their official duties.  Ceballos was a deputy district attorney employed as a calendar deputy with supervisory responsibilities.  After investigating a defense attorney's complaint regarding inaccuracies in an affidavit used to obtain a search warrant, Ceballos prepared a memo outlining his concerns and recommending that the case be dismissed.  The district attorney proceeded with prosecution, and the defense attorney called Ceballos to testify at a hearing on a motion challenging the warrant.  After the trial court upheld the warrant, Ceballos alleged that he was subsequently subjected to retaliation in violation of his First Amendment rights.  The Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  Id. at 1960.  The Supreme Court conducted the following analysis in reaching its holding.

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  Garcetti, 126 S.Ct. at 1957.  "The question becomes whether the relevant government entity had an adequate justification for

---

[3] The court does not address the arguments concerning the balancing test and qualified immunity in this Rule 12(b)(6) motion for failure to state a claim upon which relief may be granted.

treating the employee differently from any other member of the general public." Id. at 1958. "A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." Id. "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." Id. "[W]hile the First Amendment invests public employees with certain rights, it does not empower employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" Id. at 1959 (citation omitted). It is not dispositive that an employee expresses his views internally, rather than publicly, or that the subject matter of the speech concerns the employment. Id. The controlling factor in Garcetti was that Ceballos's expressions were made pursuant to his duties as a calendar deputy. Id. at 1959-60. "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." Id. at 1960.

  Benoit spoke as a citizen exposing misconduct and malfeasance when he wrote the letters to Governor Blanco and Senator Vitter. He was not acting as a senior counsel conducting his professional activities for the Board because it was not part of his duties to expose misconduct and illegal misuse of time and taxpayer's funds and to provide information to the Governor or the Senator. Because Benoit spoke as a citizen on a matter of public concern, he has stated a First Amendment claim for retaliation. Accordingly, the motions to dismiss the First

Amendment claim under § 1983 are denied.

### 2. Motion to dismiss the defamation claim

The defendants contend that Benoit fails to state a claim for defamation because his pleadings fail to differentiate allegations against each defendant. The defendants argue that Benoit alleges in a conclusory fashion that statements were published in public hearings, in recorded board meetings, and to the press that the Board terminated or suspended him for threatening another employee.

"To maintain an action in defamation, the following elements must be shown: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury." Gugliuzza v. K.C.M.C., Inc., 606 So.2d 790, 791 (La. 1992). A communication is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community." Id. (internal quotation and citation omitted).

Benoit alleges that the defendants defamed him by publishing defamatory statements against him, including a statement that he was suspended and/or terminated for threatening another employee. He alleges that the unjustified public suspension and untrue statements that he was fired were made with malice to damage his public and business reputation. Benoit's complaint states a claim for defamation, and the Rule 12(b)(6) motions to dismiss are denied.

### B. Rule 12(b)(1) motion to dismiss claims under La. Rev. Stat. 23:967

The defendants argue that Benoit may not seeks recovery of back pay and benefits pursuant to La. Rev. Stat. 23:967 until he brings his claims before the Civil Service Commission. The defendants ask that the court stay the matter on his claims for damages and attorney fees

until the administrative process has been completed.

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case."  Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  "Article X § 12(A) of the Louisiana Constitution grants to the Louisiana Civil Service Commission the exclusive power and authority to hear and decide all removal and disciplinary cases."  Goldsby v. State Dep't of Corrections, 861 So.2d 236, 238 (La. Ct. App. 2003).  "The entire thrust of the exclusive jurisdiction grant is to preclude district courts from having concurrent jurisdiction with the Civil Service Commission over classified civil service employer-employee disputes that are employment related."  Id.  Because of the exclusive jurisdiction, " La. Rev. Stat. 23:967 does not apply to employment-related disputes of classified state civil service employees."  Id.  However, courts have jurisdiction to award compensatory damages and reasonable attorney fees to civil service employees under La. Rev. Stat. 23:967.  Id.

The motions to dismiss the employment-related claims for lack of subject matter jurisdiction are granted.  Because Benoit was a classified civil service employee, the court lacks jurisdiction to address the employment-related issues, and Benoit must present the claims before the Civil Service Commission.  However, the court has jurisdiction over any claims for damages or attorney fees, and the court may hear those claims after Benoit has exhausted his administrative remedies on the employment-related claims.

### III. CONCLUSION

The defendants' Rule 12(b)(6) motions to dismiss the §1983 claim for a violation of the

First Amendment and the defamation claim are denied.  The defendants' Rule 12(b)(1) motions to dismiss the employment-related claims for lack of subject matter jurisdiction are granted.  The court retains jurisdiction over the claims for compensatory damages and attorney fees under La. Rev. Stat. 23:967, and the motions to dismiss that claim are denied.  Further, the § 1983 and state law claims are hereby stayed, and the case is administratively closed without prejudice to Benoit's right to reopen the case after he has exhausted his administrative remedies before the Civil Service Commission.

New Orleans, Louisiana, this  27th  day of October, 2006.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**